IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **MEINEKE CAR CARE CENTERS, INC.** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:08cv240 |
| | ) |
| **RLB HOLDINGS, LLC, et al.** | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FUTURE DAMAGES CLAIM

Time and time again, courts in this District have rejected Plaintiff Meineke Car Care Center, Inc.'s ("Meineke") claims against its franchisees for damages in the form of lost future royalties and fees ("Meineke's Future Damages Claim").[1] Nonetheless, Meineke now comes before the Court once again seeking the identical type of damages against Defendants RLB Holdings, LLC ("RLB"), Joe Bajjani, and Michelle Bajjani. As discussed below, Meineke's Future Damages Claim against Defendants must fail for four reasons:

(1) Meineke's Franchise and Trademark Agreement ("FTA") does not provide for the recovery prospective profits or royalties;

(2) Meineke has not proved (and cannot prove) that the future royalties and profits it is claiming would have been realized;

(3) Meineke's decision to terminate Defendants' FTAs – not Defendants' alleged breach of the FTAs – proximately caused the damages sought by Meineke; and

(4) Meineke failed to mitigate its alleged damages.

For these reasons, the Court should grant Defendants summary judgment on Meineke's Future Damage Claim.

---

[1] In its Complaint, Meineke makes claims against Defendants for breach of contract and attorneys' fees. (Complaint pp. 12-14.) In addition to its Future Damages Claim, Meineke contends that Defendants' alleged breach of contract caused it to incur damages in the form of past due fees in the amount of $21,743.47. (Complaint Ex. 23.)

# BACKGROUND[2]

## I. THE PARTIES

Meineke is a franchisor of automotive-repair centers. (Complaint ¶ 6.) Meineke's relationship with each of its franchisees is governed by an FTA. (Complaint ¶ 9.) According to Meineke's Chief Financial Officer, in the past ten years, Meineke's FTA has not changed in any way that would affect Meineke's calculation of its Future Damages Claim. (Deposition of Michael Carlet ("Carlet Dep."), excerpts of which are attached as composite Exhibit A, 86:2-7.)

RLB is a corporate entity owned and operated primarily by Joe Bajjani. The corporation was formed for purposes of operating Meineke franchises (Deposition of Joe Bajjani ("J. Bajjani Dep."), a copy of which is attached as Exhibit B, 17:2-5; 18:6-7; 30:3-5), including the four shops that are at issue in this case - Shops Nos. 1660, 1661, 1886, and 1889 (collectively, the "Shops"). The FTAs for the Shops are substantively identical to one another. (*See* Complaint ¶ 26 and Exs. 1, 5, 7, and 11.) For the Court's convenience, one of the Shops' FTAs is attached hereto as Exhibit C.

Michelle Bajjani did not participate in RLB's day-to-day operation of the Shops. (Deposition of Michelle Bajjani ("M. Bajjani Dep."), excerpts of which are attached as composite Exhibit D, 40:4-7.) Her primary role during the course of the events giving rise to this action was setting up and maintaining computer systems. (Deposition of Robert Margetts ("Margetts Dep."), excerpts of which are attached as composite Exhibit E, 49:16-24; M. Bajjani Dep. 9:10-24; 15:2-6; J. Bajjani Dep. 48:11-49:25.)

---

[2] To the extent the facts cited herein were obtained from the Complaint or the exhibits attached thereto, Defendants relies on these facts solely for purposes of showing that, even if one accepts the facts alleged by Meineke as true, Meineke's Future Damages Claim must fail as a matter of law. By citing to and relying on these facts for purposes of their motion for summary judgment, Defendants do not concede that these facts are a true representation of the events giving to this action and reserve the right to present evidence refuting these facts now or anytime in the future.

## II. THE FRANCHISE AND TRADEMARK AGREEMENT

### A. An Overview

Among other things, the FTA sets forth a schedule of fees for its franchisees. (Complaint ¶ 28.) In exchange for the payment of these fees, Meineke is obligated to fulfill certain obligations, which are detailed in the FTA. For example, the FTA contains an acknowledgement by Meineke of its commitment to the common good of enhancing customer goodwill, strengthening the business and expanding the chain of Meineke Shops for the benefit of its franchisees. (*See* Exhibit C.) Meineke also represents in the FTA that it will respect its franchisees' interest in the going-concern value of their shops. (*Id.*) In addition, Meineke represents in the FTA that it will provide local or regional support to assist franchisees with various problems and concerns. (*Id.*) Further, Meineke also states in the FTA that it recognizes the value of advertising to enhance the goodwill/going-concern value. (*Id.*) Accordingly, Meineke established a marketing and advertising fund (the "MAF") to accomplish this goal. (*Id.*) The FTA sets forth the specific manner in which Meineke is obligated to apply the MAF to accomplish fulfill its discovery obligations. (*Id.*)

### B. Termination of the FTA

Section 13.1 of the FTA entitled "Termination upon Notice" states, in pertinent part:

> In addition to our right to terminate pursuant to other provisions of this Agreement and under applicable law, we have the right to terminate this Agreement, effective upon delivery of notice of termination to you, if:
> . . .
> (j) you fail to have your Shop open for business for any 6 consecutive days after you open your Shop (other than in connection with a relocation pursuant to Section 2.6 or due to force majeure);
> . . .

*Id.*

In addition, Section 13.2 of the FTA entitled "Termination After Opportunity to Cure" states:

3

> In addition to our right to terminate pursuant to other provisions of this Agreement and under applicable law, we have the right to terminate this Agreement, effective upon delivery of notice of termination to you, if you or any Owners or Affiliates:
>
> . . .
>
> fail to make payment of any amount due us or any of our Affiliates, when due , or otherwise fail to comply with any provision of this Agreement (including the Operations Manual) not otherwise mentioned in Section 13.1or this Section 13.2, and do not correct such failure within 30 days after a formal notice of default is delivered to you.

*Id.*

### C. Recovery of Damages Under the FTA

Section 15.1 of the FTA entitled "Payment of Amount Owed to Us" states:

> You agree to pay us and our Affiliates immediately upon termination or expiration (without grant of a successor franchise) of this Agreement, all royalties, MAF payments, amounts owed for purchases from us or our Affiliates, interest due on any of the foregoing and all other amounts owed to us or our Affiliates which are then unpaid.

*Id.*

In addition, Section 15.5 of the FTA entitled "Continuing Obligations" states:

> All obligations under this Agreement which expressly or their nature survive the expiration or termination of this Agreement will continue in full force and effect until they are satisfied in full or by their nature expire.

*Id.*

## II. THE SHOPS

### A. Shop No. 1660

On or about December 17, 2001, Meineke and Joe Bajjani executed the FTA for Shop No. 1660. (Complaint ¶ 10 and Ex. 1.) Mr. Bajjani and Meineke subsequently entered into an agreement to add Michelle Bajjani as a franchisee for Shop No. 1660. (Complaint ¶ 11 and Ex. 2.) On or about May 21, 2002, The Bajjanis assigned Shop No. 1660 to RLB. (Complaint ¶ 12 and Ex. 3.)

Shop No. 1660 opened on or around June 10, 2002. (*See* Exhibit F.) The reason this shop closed is a point of disagreement between the parties. It is Defendants' position that, sometime

4

after Shop No. 1660's opening, Mr. Bajjani and certain Meineke representatives identified a site near Shop No. 1660 that was perceived as being a more profitable location for the operation of a Meineke car care center than Shop No. 1660's location. (J. Bajjani Dep. 61:18-64:9; 142:23-144:10.) At the time, another brand of car care center was operating on the site. RLB agreed to buy the non-Meineke shop and convert it into a Meineke car care center if Meineke would release Defendants from their obligations under the FTA for Shop No. 1660. (*Id*.) Defendants felt that such a release was particularly necessary in light of the close proximity of the shops, which made it likely that the two shops would compete with one another for business if they were both operating at the same time. (*Id*.) Wanting to capitalize on this opportunity for additional profitability, Meineke agreed to this deal. (*Id*.) Pursuant to the agreement with Meineke, RLB transferred the resources from Shop No. 1660 to newly-converted Shop No. 1889 (*Id*.; *see also infra*).

Meineke, however, has a different story regarding the closure of Shop No. 1660. According to the Complaint, "[o]n April 4, 2006, Meineke sent Defendants a letter notifying Defendants that if they unilaterally decided to close Shop No. 1660 prior to the expiration of the 1660 Franchise Agreement . . . the closure would be deemed an abandonment and a breach of contract . . . . In Meineke's April 4, 2006 letter [ ], Meineke asked the Defendants to notify Meineke of their intent with regard to Shop No. 1660." (Complaint ¶¶ 33-34 and Ex. 14.) Meineke claims that Defendants failed to respond to the April 4 letter, and it therefore terminated Shop No. 1660's FTA via a letter dated November 15, 2007. (Complaint ¶ 34-35 and Ex. 15.)

B.   Shop No. 1661

On or about July 2, 2002, Meineke and RLB executed the FTA for Shop No. 1661. (Complaint ¶ 14 and Ex. 5.) Defendants were never given a real chance to operate Shop No. 1661. (J. Bajjani Dep. 65:21-70:19; 71:3-73:6; composite Exhibit G.) The city in which the shop was located initially approved RLB's application to display certain Meineke signage and other Meineke-related advertising materials. (*Id*.) But soon thereafter, for reasons unknown to Defendants, the city revoked its approval and objected to the display of the Meineke-mandated color scheme on the façade of the building. (*Id*.; Margetts Dep. 42:16-43:9.) Certain rules promulgated by Meineke

5

prohibit the operation of a store that does not comply with its color scheme and signage requirements. (J. Bajjani Dep. 65:21-70:19; 71:3-73:6; 158:15-159:12; *see also* Exhibit G.) When RLB asked for an exception to these rules so it could operate Shop No. 1661 in compliance with the city's mandates and citations, Meineke refused. (*Id*.) Meineke's refusal left RLB with no way of operating Shop No. 1661. (*Id*.) If RLB tried to operate the shop in accordance with the city's ordinances, Meineke would shut down the shop. (*Id*.) If RLB tried to operate the shop in accordance with Meineke's mandates, the city would shut down the shop. (*Id*.) Adding injury to insult, Meineke did nothing to assist RLB with resolving this dilemma. (*Id*.)

The possibility of relocating the shop was considered, but it was ultimately determined that relocation was not a viable possibility, particularly under the egregiously restrictive terms set forth by Meineke. (*Id*.) Further, the restrictions the city imposed on Shop No. 1661 applied city-wide, thereby preventing RLB from moving the shop to a new location in the city. In addition, Defendants had a considerable amount of capital tied up in the real estate on which Shop No. 1661 was located, capital they would need to open a shop on a different site. (*Id*.) The downturn in the real estate market made this property nearly impossible to sell.

Meineke issued a letter stating it was terminating the FTA for Shop No. 1661 on November 15, 2007 (Complaint ¶ 40 and Ex. 19), the same day it issued the letter stating it was terminating the FTA for Shop No. 1660.

### C. Shop No. 1886

According to the Complaint, the FTA for Shop No. 1886 was executed on or around March 16, 2005. (Complaint ¶ 17 and Ex. 7.) The circumstances surrounding the execution of the FTA for Shop No. 1886 are a point of contention between the parties. It is Defendants' position that Meineke was always aware that Defendants never intended to directly participate in the operation of Shop No. 1886 because of its distance from The Bajjanis' home (i.e., The Bajjanis are based on Georgia, while Shop No. 1886 was located in South Carolina). (J. Bajjani Dep. 74:14-80:8; 81:8-84:14; 128:24-129:22.) The original franchisees for the shop backed out at the last minute. (*Id*.) It is Defendants' understanding that they had an agreement with Meineke that, as a favor to Meineke,

they would to open and momentarily run Shop No. 1886 until Meineke could locate a franchisee for the property. (*Id*.)

In accordance with that understanding, on or around January 29, 2006, RLB sold the business and goodwill of Shop No. 1886 to AEB Holdings, LLC ("AEB"). (*Id*.; Complaint ¶ 22 and Ex. 10.) Around the same time, Joe Bajjani entered into limited guaranty agreement by which he guaranteed AEB's performance under the FTA for Shop No. 1886. (Complaint ¶ 24 and Ex. 12.) By its terms, the personal guaranty was set to expire on the date AEB completed the purchase of the assets of Shop 1886. On February 1, 2006, AEB did just that (*see* composite Exhibit H), and the personal guaranty expired. (*Id.*; J. Bajjani Dep. 131:2-7.) Nonetheless, Meineke is claiming that the Defendants remained liable for AEB's obligation under the FTA for Shop No. 1886 during the events giving rise to this action pursuant to the terms of the Equipment Rental Contract between AEB and RLB. (Complaint ¶¶ 24, 51.) Meineke is also claiming that Defendants are liable for three years of lost future royalties and fees for Shop No. 1886.

Shop No. 1886 had some initial success, but then performed far below all reasonable expectations. Defendants attribute this shop's poor business performance to Meineke's failure to fulfill its duties and obligations as set forth in the FTA. (*See* Defendants' Counterclaim.) Meineke claims that it sent Mr. Bajjani a Notice of Default for this shop on January 18, 2007 (Complaint ¶ 41, Ex. 20). Then, on November 15, 2007 - the same day it issued the letters stating it was terminating the FTAs for Shops Nos. 1660 and 1661 - Meineke issued a letter stating it was terminating the FTA for Shop No. 1886 (Complaint ¶ 44 and Ex. 22).

### D. Shop No. 1889

As discussed above, Defendants agreed to buy the non-Meineke car care center that was on the site of Shop No. 1889 and convert it to a Meineke car care center pursuant to an agreement with Meineke. (*See supra*.; Complaint ¶ 20 and Ex. 9.) In reliance on this agreement, RLB executed the FTA for Shop No. 1889 on or about June 1, 2005. (Complaint ¶ 19 and Ex. 8.)

Like Shop. No. 1886, Shop No. 1889 had some initial success, but then performed far

below all reasonable expectations. (J. Bajjani Dep. 144:19-146:4.) Defendants attribute this shop's poor business performance on Meineke's failure to fulfill its duties and obligations as set forth in the FTA. (*Id.*; *see also* Defendants' Counterclaim.)

Meineke claims Shop No. 1889 closed on August 1, 2007. (Complaint ¶ 43.) Meineke issued a letter stating it was terminating the FTA for Shop No. 1889 on November 15, 2007, the same day it issued the letters stating it was terminating the FTAs for Shops Nos. 1660, 1661, and 1886.

## VI. MEINEKE'S FUTURE DAMAGES CLAIM

In its Complaint, Meineke makes claims against Defendants for breach of contract and attorneys' fees. (Complaint pp. 12-14.) Meineke contends that Defendants' alleged breach of contract caused it to incur damages in the form of past due fees in the amount of $21,743.47. (Complaint Ex. 23.) In addition to these past due fees, Meineke is also seeking damages in the form of lost future royalties and fees. (Complaint, First Claim of Relief.) In an affidavit from its CFO, which is attached to the Complaint, Meineke sets forth the formula by which it calculated its Future Damages Claim. (Complaint Ex. 23.) This formula is the same formula used by Meineke to calculate its claim for future damages for all cases litigated within the last five years. (Carlet Dep. 12:11-13:15.) The amount of Meineke's Future Damages Claim is $349,935.84. (Complaint Ex. 23.)

Meineke's Future Damages Claim is based on its contention that it will take approximately three years to refranchise each of the Shops. (Complaint ¶ 52.) According to Meineke's CFO:

> What the term refranchise means to me, as it relates to this affidavit, would be if we put marketing efforts in place to find a franchisee to go into that specific protected territory [of a closed shop] that is now available, how long it would take us to advertise for a franchisee, find that franchisee, find him a location, get him open, and get him ramped up.

(Carlet Dep. 54:12-24.) Meineke, however, admits that it typically does nothing to try to refranchise a shop once it is closed. (Carlet Dep. 66:6-67:20.) It further admits that it is capable of taking efforts to refranchise a shop, but it simply chooses not to do so. (*Id.*) There is no evidence that Meineke attempted to refranchise any of the Shops at issue in this case.

8

**DISCUSSION**

The Court should grant Defendants summary judgment on Meineke's Future Damages Claim for four reasons: (1) Meineke's Franchise and Trademark Agreement ("FTA") does not provide for the recovery prospective profits or royalties; (2) Meineke has not proved (and cannot prove) that the future royalties and profits it is claiming would have been realized; (3) Meineke's decision to terminate Defendants' FTAs – not Defendants' alleged breach of the FTAs – proximately caused the damages sought by Meineke; and (4) Meineke failed to mitigate its alleged damages.

**I. MEINEKE'S FUTURE DAMAGES CLAIM MUST FAIL BECAUSE THE FTA DOES NOT PROVIDE FOR THE RELIEF OF PROSPECTIVE PROFITS OR ROYALTIES.**

Sections 3.2 and 3.4 of the FTA set out the fees franchisees are obligated to pay Meineke. These fees consists primarily of royalty fees and contributions to the MAF. The exact amount of the fees due are calculated based on a percentage of a franchisee's revenues (e.g., 8% of a franchisee's gross revenue is allocated to the MAF). This District has previously held that Meineke is not entitled recover future damages under the FTA because a franchisee's generation of revenue terminates upon the termination of the franchisee's FTA:

> When [Meineke] terminated the franchise agreement, [Meineke] terminated the [d]efendants' ability to generate any revenues from the sale of Meineke products which would, in turn, generate any liability for "royalty fees" under Section 3.2 or Advertising Fund fees under Section 3.4. Any percentage of zero is zero. Thus, the franchise agreement makes no provision for [Meineke] to recover any amounts from [the] [d]efendant for periods subsequent to the termination of the agreement.

*Meineke Car Care Centers, Inc. v. L.A.C. 1603*, Civil Case No. 3:08cv73, 2008 WL 1840779, *1 (W.D.N.C. April 23, 2008).

In making its decision, the court in *L.A.C. 1603* determined that the express terms of the FTA prevent Meineke from recovering future damages in the event of the FTA's termination:

> In fact, Section 15.1 of the agreement states:
>
>> You [Defendants] agree to pay us [Meineke] and our Affiliates immediately upon termination or expiration (without grant of a successor franchise) of this Agreement, all royalties, MAF [Advertising Fund] payments, amounts owed for purchases from us or our Affiliates, interest due on any of the foregoing and all other

> *amounts owed* to us or our Affiliates which are then unpaid. (emphasis added).

That provision is clearly not prospective in nature. It does not contemplate the [d]efendants being obligated for any "future" royalties or fees.

Likewise, Section 15.5 reads

> All obligations under this Agreement which *expressly or by their nature survive* the expiration or termination of this Agreement will continue in full force and effect until they are satisfied in full or by their nature expire. (emphasis added).

The provisions requiring the payment of the royalties and Advertising Fund fees do not "expressly or by their nature survive."

*Id*. at *2. Based on this analysis, the *L.A.C. 1603* court denied Meineke's claim against one of its franchisees for lost future royalties and fees. *See also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999) ("The rights and duties of the parties to a franchise agreement are created by the agreement. In the absence of an agreement, neither party has a duty to perform and neither has a right against the other.")

Like the court in *L.A.C. 1603*, the Court – presented here with the same FTA – should deny Meineke's Future Damages Claim. As was the case in *L.A.C. 1603*, when Meineke terminated the Shops' FTAs, it also terminated the Shops' ability to generate revenue. Absent the generation of revenue, Defendants had no obligation to pay fees to Meineke. Meineke's FTA does not contemplate Meineke franchisees such as Defendants being obligated for any future royalties or fees upon the FTA's termination. As the *L.A.C. 1603* court stated, "[a]ny obligation for such royalties and fees ended with the termination of the franchise agreement." *Id*.

**II. MEINEKE'S FUTURE DAMAGES CLAIM MUST FAIL BECAUSE MEINEKE HAS NOT PROVED (AND CANNOT PROVE) THAT SUCH PROFITS WOULD HAVE BEEN REALIZED.**

Meineke may attempt to argue that it is entitled to the future damages it is seeking on a theory that it is entitled to recover lost profits stemming from Defendants' alleged breach of contract, an argument Meineke also attempted to make in *L.A.C. 1603*. The Court in *L.A.C. 1603*, however, rejected this argument in full, stating:

> Lost profits . . . are recoverable only under limited circumstances. *Keith v. Day*, 81 N.C. App. 185, 195-96, 343 S.E.2d 562, 568-69 (1986) ("Lost profits are

recoverable in a breach of contract action 'when it is made to appear (1) that it is reasonably certain that such profits would have been realized except for the breach of the contract, (2) that such profits can be ascertained and measured with reasonable certainty, and (3) that such profits may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of the breach."); *Honey Dew Associates, Inc. v. M & K Food Corp.*, 241 F.3d 23, 28-29 (1st Cir. 2001).

In addition to the fact that the franchise agreement does not contain a provision for the recovery of lost profits or royalties, it also does not contain a provision relating to a three year period. **Meineke's claim that it usually takes it three years to re-franchise a business is speculative.** *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608 (1987) ("[W]hen prospective profits are conjectural, remote, or speculative, they are not recoverable."). **Meineke seeks a default judgment for three years of prospective losses even though it might re-franchise the business within one year or less. Moreover, although Meineke has set forth a formula for computing such prospective fees, it has neither shown nor alleged that at any time during its franchise with the Defendants the business was profitable.** *Mosley, supra.*, ("If an established business is wrongfully interrupted, the damages can be proved by showing the profitability of the business for a reasonable time before the wrongful act.").

*Id*. at 2 (emphasis added).

Similarly, in another case in this District - *Meineke Car Care Centers, Inc. v. Duvall*, Case No. 3:06-CV-180, 2007 WL 1100841, *1-2 (W.D.N.C. April 12, 2007) - the court denied Meineke's request for prospective relief for the same reasons set forth in *L.A.C. 1603*. In *Duvall*, the defendant-franchisee operated a Meineke shop for approximately one year before he began experiencing financial difficulties and became delinquent in his obligation to pay franchisee fees and advertising contributions under the FTA. Meineke sent the defendant-franchisee a notice of default, and then terminated the FTA. In its complaint against the defendant-franchisee, Meineke made a claim for lost prospective profits due to early termination of the FTA. The court in *Duvall* denied Meineke's claim for future damages, stating:

> [The defendant] represent[ed] that he [could] not understand how Meineke can claim three years [ ] in lost prospective profits when the franchise itself was not generating sufficient income to operate at a profit-[an argument that] highlights a gaping hole in Meineke's proof. [T]o recover prospective profits (here, in the form of prospective franchise fees and advertising contributions), Meineke must prove, inter alia, that "it is reasonably certain that such profits would have been realized except for the breach of the contract."
>
> . . .
>
> Meineke carries an affirmative burden to prove that [the defendant's] shop would have continued to generate income but for the breach, and does not meet this burden

> simply by relying on an absence of evidence to the contrary. Moreover, where [the defendant] has represented to the Court that he closed shop due to a lack of business approximately three months after Meineke terminated his franchise (as confirmed by Meineke's counsel's representations that it would not pursue its claims for injunctive relief because [the defendant] had ceased operating a competing business), the Court is satisfied that Meineke cannot recover the claimed three years' worth of lost profits

*Id*.

Turning to the present action, as the court recognized in *L.A.C. 1603*, Meineke's claim that it usually takes it three years to refranchise a shop is speculative, and must therefore be denied. There has yet to be developed a means by which to predict the future, including predicting how long it would take Meineke to refranchise the Shops (even assuming Meineke took such efforts, which it did not (*see supra*)).

Further, as was the case in both *L.A.C. 1630* and *Duvall*, Meineke cannot establish that the Shops were profitable for a reasonable time before the termination of the FTAs. Indeed, because of Defendants' agreement with Meineke, there is no evidence that Shop No. 1660 was generating income at the time Meineke terminated the Shop's FTA. Further, Shop No. 1661 never got its operations off the ground due to irresolvable conflicts with Meineke and the city in which it was located and, thus, was never profitable. Similarly, Meineke did not terminate the FTAs for Shops Nos. 1886 and 1889 until after the shops stopped being profitable - Meineke cannot present evidence showing that either shop was profitable within a "reasonable time" before the FTA was terminated.

In sum, applying the reasoning of *L.A.C. 1630* and *Duvall* to the present case makes it clear that Meineke is not entitled to recover lost prospective fees from Defendants for any of the Shops. Thus, Meineke's Future Damages Claim against Defendants must fail as a matter of law.

### III. MEINEKE'S FUTURE DAMAGES CLAIM MUST FAIL BECAUSE MEINEKE'S DECISION TO TERMINATE THE SHOPS' FTAS – NOT DEFENDANTS' ALLEGED BREACH OF THE FTAS – PROXIMATELY CAUSED THE DAMAGES SOUGHT BY MEINEKE.

In *Meineke Discount Muffler Shops, Inc. v. Dusoe*, Civil Action No. 3:01CV468, (W.D.N.C., Order dated November 13, 2001) (attached hereto as Exhibit I), this District denied an attempt by Meineke to recover lost future royalties from one of its franchisees when Meineke

terminated the franchisee's FTA. The *Dusoe* court held that it was Meineke's termination of the FTA – not the franchisee's alleged breach of the FTA – that proximately caused the damages sought by Meineke:

> Defendant urges that the Court can grant no relief to Plaintiff for loss of future royalties, because the Plaintiff terminated the franchise agreement on July 9, 2001 (effective June 30, 2001). One way of framing the issue is to ask "whether a franchisee's failure to timely pay some past royalty fees entitles a franchisor to both terminate the franchise agreement and receive an award of future loss royalties." (citation omitted) Defendant correctly suggests that the issue of whether the franchisor can both terminate the agreement and claim lost future royalties has not been addressed by the Fourth Circuit. Defendant, to assist the Court in filling this jurisprudential gap, offers opinions from other jurisdictions.
>
> The Court finds persuasive Judge Leonard's analysis in *I Can't Believe Its Yogurt v. Gunn*, 1997 WL 599391 (D. Col. 1997), which drew deeply from *Postal Instant Press Inc. v. Sealy*, 43 Cal. App. 4th 1704 (Cal Ct. App. 1996). On facts similar to those in the instant matter, both courts stressed that the conclusion turned on: (1) the proximate cause of the loss of future royalties, and (2) whether an award of damages would be unreasonable, unconscionable, or grossly oppressive. *See Gunn* at 24. They ruled that when a franchisor makes the decision to terminate, that this decision is the proximate cause of the future failure to pay royalties. *See id*.
>
> In Meineke's situation, as in the franchisor's situated in *Sealy*, the franchisor may choose either to terminate the agreement or continue the agreement and insist on royalties as they become payable. *See id*. (and cases cited therein). Assuming, *arguendo*, that [the franchisee] did breach portions of his agreement with Meineke, such breach would not be the proximate cause of Meineke's future royalty losses. The proximate cause would be Meineke's termination of the agreement. Even if [the franchisee's] breach amounted to a total breach, which Meineke suggests, Meineke's remedy for future royalties arising from the breach. Once Meineke elected to terminate the agreement, [the franchisee] was no longer in breach, and future royalties owed by him could therefore not accrue under the franchise agreement. As such, the franchise agreement could not be used as a measure of damages. The outcome would be different if [the franchisee] had terminated, but since Meineke terminated, it is the proximate cause of the lost future royalties.

*Id*. at 4-5; *see also Burger King Corp. v. Hinton, Inc*., 203 F. Supp. 2d 1357, 1366 (S.D. Fla. 2002) ("BKC has shown that Defendants committed a breach of the contract by failing to remit payments, but it has not demonstrated that its total requested award of lost profits resulted from Defendants' breach. BKC is certainly entitled to its lost royalty and rent payments, but Defendants' failure to pay these amounts did not proximately cause BKC's loss. BKC decided to terminate the Franchise Agreements due to Defendants' breach, and it was this action that has caused the loss of future profits.").

Here, Meineke initiated a decisive, deliberate scheme to terminate the FTAs for the Shops,

issuing notices of termination for all four shops on the exact same day. As was the case in *Dusoe*, it was Meineke's decision to terminate the FTAs – not any alleged breach of contract by Defendants - that proximately caused Meineke's alleged future damages. Even assuming Meineke's breach of contract claim against Defendants to be true, "[o]nce Meineke elected to terminate the agreement, [Defendants were] no longer in breach, and future royalties owed by [them] could therefore not accrue under the franchise agreement." *Id*. at 5. Accordingly, the Court should grant Defendants summary judgment on Meineke's Future Damages Claim.

In response, Meineke may argue that Defendants abandoned the Shops and, thus, it was Defendants – not Meineke – that terminated the FTAs. This argument, however, is belied by the fact that Meineke's CFO has admitted that the reason a shop closes does not have any bearing on his calculation of Meineke's Future Damages Claim as set forth in his affidavit. (Carlet Dep. 98:3-5). Meineke asserts its Future Damages Claim against franchisees as a matter of rote. Any alleged misconduct by Defendants had no bearing on Meineke's decision to claim future damages in this case.

Further, any potential "abandonment" argument by Meineke must fail given the facts surrounding the closing of each Shops. As discussed above, Defendants closed Shop No. 1660 pursuant to an agreement with Meineke – Meineke, not Defendants, chose to terminate the FTA. Shop No. 1661 closed because Defendants could not operate the center in compliance with both Meineke's rules and applicable city ordinances – again, Meineke, not Defendants, chose to pursue the termination of the FTA. Defendants did not abandon Shop No. 1886, but rather sold it to another franchisee – such actions hardly constitute abandonment. Lastly, Meineke admits its in Complaint that it is the one that terminated the FTA for Shop No. 1889. (*See* Complaint ¶ 44, which states, in pertinent part, "on November 15, 2007, Meineke terminated Defendants' 1889 Franchise Agreement effective August 1, 2007.")

Moreover, even if the closure of the Shops could be described as "abandonment" in layperson terms, Meineke's and Defendants' relationship with one another is governed by the terms of the FTAs, not Meineke's characterization of Defendants' actions. *See Burger King Corp*.

*v. Weaver*, 169 F.3d 1310, 1317 ("The rights and duties of the parties to a franchise agreement are created by the agreement. In the absence of an agreement, neither party has a duty to perform and neither has a right against the other.") There is no provision in the FTA that allows a franchisee to terminate the FTA by abandonment or by any other means. The only party that can actually terminate the FTA is Meineke. (*See* FTA § 13.) Thus, any argument that it was Defendants' "abandonment" of the Shops that caused the termination of the Shops' FTAs cannot succeed.[3]

## IV. MEINEKE'S FUTURE DAMAGES CLAIM MUST FAIL BECAUSE MEINEKE FAILED TO MITIGATE ITS ALLEGED DAMAGES.

"The general rule relating to the injured party's duty to mitigate with respect to a breach of contract situation is that 'the injured party must do what fair and reasonable prudence requires to save himself and reduce the damage; or the damage which arises from his own neglect will be considered too remote for recovery.'" *Robinson v. Rapscallion Marine, Inc.*, No. COA04-1001, 2005 WL 2649155, *7 (N.C. App. October 18, 2005) (citing *Turner Halsey Co. v. Lawrence Knitting Mills, Inc.*, 248 S.E.2d 342, 344 (1978)); *see also Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, 632 S.E.2d 192, 195 (N.C. App. 2006) ("Our Court has held that in an action for tort committed or breach of contract without excuse, it is a well settled rule of law that the party who is wronged is required to use due care to minimize the loss.") (citation omitted). A defendant bears the burden of proving that a plaintiff failed to mitigate its damages. *Robinson*, 2005 WL 2649155, *7 (citing *Tripps Rests. of N.C., Inc. v. Showtime Enters., Inc.*, 595 S.E.2d 765, 768 (2004)). A plaintiff's failure to mitigate its damages operates as a bar to recovery. *Miller v. Miller*, 160 S.E.2d 65 (N.C. 1968) (stating that the rule in North Carolina is that an injured plaintiff must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong - if he fails to do so, for any part of the loss incident to such failure, no recovery

---

[3] Indeed, construing the FTA any other way would be disastrous. In writing the FTA, Meineke expressly reserved the right to be the sole party with authority to terminate the FTA. In reserving that right, Meineke destroyed any claim to future lost royalties and fees. The provision in the FTA that Meineke is the only party that can terminate the FTA protects a franchisee from a claim of future damages. Franchisees such as Defendants consider and rely upon this protection when examining the FTA and making the decision to become franchisees. Meineke cannot now rewrite the FTA simply by characterizing the reason for closure of a shop as "abandonment."

15

can be had).

Meineke's Future Damages Claim is based on its contention that it will take approximately three years to refranchise each of the Shops. (Complaint ¶ 52.) According to Meineke's CFO, however, Meineke typically does <u>nothing</u> to try to refranchise a shop once it is closed:

> Q: My question is: What efforts are you aware of that Meineke employs to refranchise a terminated franchise?
>
> A: We typically do not try to refranchise a specific territory.
>
> . . .
>
> A: We could do it, but we don't.

(Carlet Dep. 66:6-67:20.) Meineke's failure to mitigate against the future damages it claims it suffered as a result of Defendants' alleged breach of the Shops' FTAs bars Meineke's recovery of such damages as a matter of law. Thus, the Court should grant Defendants summary judgment on Meineke's Future Damages Claim.

## CONCLUSION

As discussed above, the Court should grant Defendants summary judgment on Meineke's Future Damages Claim for four reasons: (1) the FTA does not provide for the relief of prospective profits or royalties; (2) Meineke has not proved (and cannot prove) that the future royalties and profits it is claiming would have been realized; (3) it was Meineke's decision to terminate the FTAs – not Defendants' alleged breach of the FTAs – proximately caused the damages sought by Meineke; and (4) Meineke failed to mitigate its alleged damages.

Respectfully submitted on February 20, 2009.

[signature block on following page]

*Attorneys for the Defendants*.

/s/ Rodney L. Eason
Rodney L. Eason, Esq.
Georgia Bar No.: 237485
Charles D. Hodges
Georgia Bar No.: 358758
Leslie K. Eason, Esq.
Georgia Bar No.: 100186
The Eason Law Firm
6150 Old National Highway
College Park, Georgia 30349
(770) 909-7200
(770) 909-0664 fax

Tyyawdi M. Hands, Esq.
N.C. State Bar No. 26429
Hands Law Office, PLLC
3558 N. Davidson Street
Charlotte, North Carolina 28205
(704) 248-7976
(704) 248-2866 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2009, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record in this case.

/s/ Rodney L. Eason
COUNSEL